Call the first case, Branch v. Sweeney. May it please the court, my name is Sean Andrew Sear, counsel for the appellant Horace Branch, and I am pleased to introduce Elyse Lyons, a third-year law student at Duke University School of Law, to present the argument this morning. Thank you, Mr. Andrew Sear. Ms. Lyons? I have to tell you, I had a law clerk last year from Duke, and while she was there, I got a call from your person in charge of placements, and she wanted to know why it was I never had a law clerk from Duke. I had one right at that time. I think she went back over her records. Good morning, your honors, and may it please the court. My name is Elyse Lyons, and I represent the appellant Horace Branch in today's case. With the court's permission, I'd like to reserve two minutes for rebuttal. Indeed. This is a habeas case brought by a man with a life sentence, in which trial counsel's failure to call two witnesses, including an eyewitness to a shooting, was so objectively unreasonable as to undermine any confidence in the trial's outcome. For this reason, this court should reverse the district court. Wasn't Mr. Robinson really cumulative? No, your honor. Instead, it was objectively unreasonable for the state to find that these witnesses were merely cumulative, and that's for two reasons. First, because these witnesses, both Robinson and the uncalled eyewitness, Mr. Stanley, would have provided additional information that the jury had not yet For example, Mr. Sammy would have explained how Petey, the drug dealer, came to obtain a second gun after the shooting. The jury heard that after the shooting, Mr. Branch left the hallway with the nine millimeter gun, and Sammy, the uncalled eyewitness, would have explained that Petey went to an apartment in that building and procured a second gun. Without this explanation as to how both Petey and Branch had a gun after the shooting, the jury would have been more likely to believe the state's theory of a crossfire rather than Mr. Branch's theory that there was a single gun in the hallway prior to the shooting. But the jury did hear testimony that Branch entered without a gun. He was there essentially for, uh, to get his money back, I suppose, for a bad drug deal. But he came in without a gun. The jury heard all that. Yes, your honor, that's correct. But in this case, the two different versions of events that the state presented and that Mr. Branch presented constituted a swearing match. And courts have held that in a swearing match, witnesses who testify as to a central and hotly contested issue cannot reasonably be deemed merely cumulative. If you had if you had your druthers in this case, what would you ask for? In this case, your honor, Mr. Branch has established ineffective assistance of counsel. He's asking for habeas relief. At the very least, our argument is that relief should not be denied absent an evidentiary hearing to establish Mr. Branch's claim that trial counsel in this case didn't even investigate the witnesses. So, basically, you want to get a new trial? Yes, your honor. But, uh, you want to get a new trial where these witnesses that were not called by counsel would then be permitted to testify. Is that pretty much it? Yes, Judge Fuentes, that's correct. But, uh, Branch's trial attorney has stated that he has trouble recalling why he didn't call those two witnesses in the first place. Maybe you can, the second thing is, is there any evidence that these witnesses are now available? To your first point, Judge Fuentes, about trial counsel's potential reasons for calling or not calling these witnesses, it's our position that no trial counsel adopting a reasonable strategy would have failed to call these witnesses. And, therefore, the subjective reasons that Mr. Mask, the trial counsel, could offer are irrelevant to this court's finding that it was objectively unreasonable. Well, couldn't, weren't there problems with Sammy with regard to calling him? First of all, his background was far from really white, to say the very least. But, secondly, some of what he would have testified to would have been contrary to the defense, wouldn't it have been? Did his version have the defendant acting a lot more violently than the defendant claimed he acted? They threw something on the ground, as I recall. Isn't that right? Yes. To your first point, about whether or not Sammy had a troubled background, in this case, Your Honor, that would have been an unreasonable reason not to call Mr. Sammy. All of the witnesses in this case had criminal backgrounds. Even the prosecutor noted in her closing argument, when you cast a play in hell, you don't have angels for characters. It would have been unreasonable not to call him for that reason. As to your second point about the inconsistency, the State has posited that the central issue in this case, and we agree, is whether or not Branch entered the hallway armed or unarmed. Whether or not it was Branch or the State's witness, the drug dealer, Petey, that produced the murder weapon, the 9mm gun. So insofar as there are minor inconsistencies about him coming in agitated versus not, Mr. Sammy's testimony is not inconsistent on the central issue. Would that really be minor, though? Would it make any sense that a person would go in to complain about the drugs that they had received in an area like this and act violently if they weren't carrying something to protect themselves with? I mean, he wasn't exactly entering, you know, a church in the area. Yes, Judge Van Interpen. However, Mr. Branch never testified on direct examination or on cross-examination that he was not agitated or upset when he entered. And therefore, based on the face of the affidavits, it's not a direct contrast to the testimony that Mr. Branch was advancing. What's problematic about this line of reasoning that the State is urging the court to adopt is that Mr. Mask, the trial counsel, could have looked at the face of the affidavits and made a judgment about these inconsistencies without even investigating these witnesses. How do you know that? Branch has pled both in the PCR court and through his federal petitions that Mr. Mask conducted no investigation. How do we know that Mr. Mask's decisions were not trial strategy decisions? Your Honor, the record contains no evidence about Mr. Mask's trial strategy because in this case, unlike many others, there was no evidentiary hearing in the post-conviction relief state court. The record does suggest that he was a pretty good lawyer, that he was an experienced lawyer working for the public defender's office and knew full well that he could call these witnesses. That's correct, Your Honor. However, even experienced lawyers sometimes make bad judgments. This court has seen it before, for example, in the case of Jaynes v. Grace, where an attorney called witnesses three to four weeks before trial and then never followed up. This court called that a far cry from a reasonable investigation. What was the district court's decision on this issue? In this case, Your Honor, the district court deferred to the PCR court's reasoning, the state court, that there was no prejudice or performance problem under Strickland. Has there been a hearing in which Mr. Mask testified and for his trial decision? Never, Your Honor, not on this issue of the failure to call witnesses. Did the petitioner ask for an evidentiary hearing? Yes, Judge Greenberg. Mr. Branch asked for an evidentiary hearing even before briefing on direct appeal in February of 1996. He has renewed that request several times over the last years and has never yet been granted the evidentiary hearing he has sought. Actually, that goes to my point. That was not done in the district court, no, Your Honor. There was no hearing in the district court. That's what I meant. Did he ask for an evidentiary hearing in the district court? Yes, Your Honor. Trial counsel has never testified about a specific reason that he had not to call these witnesses, and because they provided important corroborative testimony on this central issue, it was objectively unreasonable not to. These witnesses were one of whom was an uncalled eyewitness. This would have given the jury an opportunity to hear from one of the no more than eight to ten people in the hallway on the morning Mr. Mosley was shot. Not only would this have doubled the number of eyewitnesses testifying for Branch, but it would have reinforced the testimony of Michael Davis, the eyewitness who did testify for Branch. The jury also heard testimony that Branch ran away from police when he was pursued by police, happened to have in his possession a nine-millimeter handgun that was used in the murder. Yes, Your Honor, that's correct, and because Mr. Branch was found with a nine-millimeter gun and never contested that he was in the hallway that morning, it was incumbent on defense trial counsel to explain how he came to possess that gun without being responsible for the felony murder that he was accused of, and an additional eyewitness could have provided that explanation, corroborating Branch's version that it was in fact Petey that pulled the gun. Moreover, the uncalled prior inconsistent statement witness, Stan Robinson, would have impeached the state's witnesses and unraveled the state's theory of an armed robbery. Through the uncalled... The state had a strong case though, did they not? In this case, Your Honor, it was clear that the jury was struggling. In fact, the jury acquitted Mr. Branch on several of the robbery counts and submitted questions to the jury about Petey, about felony murder, and about some of the physical evidence in this case. Instead, it's clear that the case turned on a credibility determination between the witnesses in these two different versions, and because it was a swearing match, it was incumbent on trial counsel to call any and all witnesses... Well, we don't really know what the jury took into account, do we? That's correct, Your Honor. However, here there's a reasonable probability that if these witnesses would have been called, at least one juror would have found a reasonable doubt. At least one juror would have been persuaded that the state's witnesses did concoct the stick-up and crossfire theory, because on the day of the incident, Robinson heard Murphy say, in fact, Horace Branch did complain about buying bad drugs. There was one independent witness, wasn't there? An Eddie Ratchford. Independent, didn't seem like he had an axe to grind, had no record to speak of, and was on his way to work, and his testimony was that Branch pointed a gun at him. In this case, Your Honor, Mr. Ratchford had a previous relationship with PeeDee, the drug dealer, and the jury heard testimony that prior to speaking with police, first one of PeeDee's friends, and then PeeDee herself, visited Mr. Ratchford at work in order to discuss with him the events of that day. Mr. Ratchford had no independent corroborate, or had no independent memory of the incident, and the prosecutor offered him only as a corroboration witness for the account presented by the state's eyewitnesses. So his testimony alone would not be convincing enough to... So you don't believe that any fair-minded jurist could agree with the state court decision? No, Your Honor. In this case, no fair-minded jurist could find that not calling these witnesses would not have produced a reasonable probability that a juror would find a reasonable doubt. The two witnesses are Semmy and Robinson? Yes, Your Honor. And they both did two affidavits? In this case, Your Honor, the record, there's never been an evidentiary hearing to explore, you know, when they created them or how they were delivered to counsel. Mr. Branch has asserted the fact that he received these affidavits and shared them with trial counsel Mr. Mass, but that's never been explored in a question-and-answer format. Should there be a evidentiary hearing, and should there be a new trial, does anybody know whether these two locating these witnesses at this point? The state court never made a determination, a factual finding about their availability at the time of trial or at the time Mr. Branch was requesting an evidentiary hearing in the state court, but we have not had contact with these witnesses to know where they are now. By casting the state's witnesses in a different light through the testimony of the uncalled witness, there's a reasonable probability that the jury would have the reasonable doubt that Branch needed. And trial counsel's failure to produce these witnesses was objectively unreasonable. In this case... But you do say that no, if I heard you correctly, no good lawyer would, as a matter of sound strategy, fail to call these witnesses. Is that your position? Yes, Your Honor. But why would that be if the lawyer thought that they would, these two witnesses, would damage his case, especially in light of their own prior records? I mean, why isn't it a matter of sound strategy and professional judgment? In this case, Your Honor, the record reveals that it was not this particular attorney's strategy to not put on witnesses with criminal backgrounds, because all the witnesses that he did call had criminal backgrounds, and many of the state's witnesses were also crippled with this credibility account. As far as the inconsistency goes, these witnesses were consistent on the central issue. They both testified there was a dispute over bad drugs, and it was Petey, not Branch, that pulled the 9-millimeter gun. In this case, the jury was deprived of eyewitness testimony that put the murder weapon in someone else's hands. Neither trial counsel's strategy, as revealed by the record, or any objective strategy, would justify the failure to call these witnesses. There were two guns involved? No, Your Honor, there was only one gun involved in the hallway. Wasn't there a .38 caliber gun that was in Lee's possession at some time? Your Honor, I see my time has expired. May I answer your question? In this case, Branch asserted that it was Petey who pulled the 9-millimeter gun in the hallway. He lunged at her to get that gun out of her possession, and that's when the gun fired, striking Mosley. Sammy, the uncalled eyewitness, would have explained how Petey went up to an apartment and obtained a second gun, but it's Branch's theory that there was only one gun in the hallway prior to the shooting. Thank you. Thank you, Ms. Lyons. Ms. Friedman? Thank you, Your Honor. Sarah A. Friedman, Special Deputy Attorney General, acting Essex County Prosecutor for the State. Your Honor, there are three main points I'd like to address, with the Court's permission. The first being the key difference between the parties, I believe, is right in the statement of the issue presented. The State's position is that the issue was whether Strickland was unreasonably applied in this case, and if you look at page four of my adversary's brief, their statement of the issue is whether or not counsel was ineffective, and that's a huge difference. What does she have to show on a habeas? What's the statute require? I think the statute requires, first, deference to the State Court's legal and factual findings, and deference to the defense attorney who tried the case, and then she would have to show, if she's using D1, that either the decision of the court below was contrary to federal law or an unreasonable application of federal law. I think that to show that the attorney was ineffective right off the bat. Well, I think what she was saying was that it was contrary to federal law because he was ineffective. I think it's sort of implicit in what she said. She may not have articulated it quite as you put it, but I think that's what she intended. Well, if that's what she's saying, then I think she would have to agree that deference is owed to the State Courts, and I don't see any deference in the brief that was filed in this matter, and the deference is because of the Anti-Terrorism and Effective Death Penalty Act and the way it's applied to the habeas statute, that the factual determinations of the court are presumed to be correct, and I don't believe that presumption existed or existed on their behalf. If we focus on this issue of prejudice, how could it not be prejudicial to fail to call two witnesses who throw into question who in fact was the shooter in this case? Apparently that's what the jury was focused on. Who did the shooting? Well, I think you have to look at really what was contained within the certifications that were supplied to the State Court, and those certifications are so inconsistent with what Mr. Branch testified to initially. Mr. Branch said, I had Murphy come to identify the drug seller. But his testimony was very steadfast that he entered without a gun. That's what he said. He entered without a gun, and that's what Sammy supposedly would have also said, but at the same time, he had Murphy unwillingly accompany him into that hallway, and the reason being that he needed to identify the drug dealer, and what did he do? According to Mr. Sammy, he came in and it was, quote, he came through the door, unquote, throwing the cocaine on the floor, yelling at people not to buy drugs from Petty because she sold beat drugs. That is not how Horace Branch wanted to present himself to the Court. That was not his story. The other part was that Mr. Sammy was saying that Mr. Branch grabbed the gun out of the hand of Miss Petty because she drew first. That's what he was saying. But really, you don't have that in this case because Mr. Branch purposely prevented anybody from saying that he touched that gun. You really don't know that because Sammy was not called to testify. No, but that's in his certification. It's in his certification that the gun was grabbed from Petty's hand, and that's also in Robinson's certification for that matter, and that's not what Branch wanted anybody to hear. He didn't want his hand on that gun prior to the shooting, and he made very clear how that shooting occurred, how they fell to the ground, and I would like to point something out about the forensics in this case because there was an error in my brief. I thought there were two casings, three casings found when in fact there were two, but the casings that were found were found near the stairwell, near where the body was as Mr. Mady tried to run up the steps. The testimony was that Petty had a revolver, and according to the experts that testified for the state, when you have a revolver, you don't have an automatic ejection of casings. There would be no casings on that crime scene from Petty's gun because she had a revolver. How many casings were there? Two casings were found near the body, all right. Also, there was some mention made in the brief about, well, how could the forensics support the state's case when we were arguing that the medical examiner showed there was no trajectory upward or downward, and Mr. Branch was an exceedingly short man, and if you hold a gun straight out and you shoot and your victim is shot in the knee and falls, where's the next bullet going to go? It's going to go into his upper torso, exactly as the state described the shooting. So there were forensics that I think supported the state. I do not believe there were forensics that were contrary to the testimony of the state. If you also look at the testimony... I think Ms. Lyons is not complaining about the evidence that was presented. She's complaining about the evidence that was not presented. Well, she's complaining... The evidence that was not presented, the witnesses that were not called to dispute the state's evidence. Because she's claiming that everything is a credibility match, and that was never the state's position. Yes, there were credibility issues. There were problems with the state case. There were problems with the defense case, and the witnesses didn't agree as to who pulled which gun out when, but the bottom line in all of this is that there was some forensic evidence to support the state, and there was no contrary evidence. And in addition to that, I believe Your Honor mentioned the fact that when he was arrested the following day... Not the following day, but days later by the officer, he had the gun on him, and it wasn't just that he had possession of the gun. He tried to use that gun against the officer. He cocked that gun, which is when he was grabbed, and they went rolling down the steps together to avoid injury to the credibility match between some of the witnesses. And when you look at Harrington... That's not in dispute, is it? That he picked up the gun and ran with the gun? That he was caught with the gun when the police apprehended him? There's no dispute that he was caught with the gun. There is a dispute as to picking up the gun. The question is, who shot Mosley? That's where the focus is, and Ms. Lyons is saying there are two witnesses who were present when this shooting occurred. And these witnesses say that Branch did not have a gun, and basically she's saying the lawyer should have called those witnesses. Well, if Your Honor please, actually one witness allegedly was on the scene. The second witness was not on the scene. He's being offered... You mean Robinson or Sammy? Robinson was not on the scene. He's being offered just to affect the credibility of the state witness. And I might also add, I'm presuming that his testimony would have been admissible, but we do have rules of evidence under Rule of Evidence 613. It would have been in the court's discretion whether to admit evidence of a prior inconsistent statement without giving him the chance to admit or deny that he said these things. Does your court make any analysis of the failure to call these two witnesses? She heard the case apparently. The judge who, you mean the PCR? Yes, no, the federal court. No, there was, she relied, she deferred to the state court record because in the state court the judge found a few things. Number one, he found that the witnesses that were called by John Mask were superior in the sense that Mr. Davis actually said he too had bought bad drugs from the same drug dealer that very morning. So that was supportive of what Mr. Branch had said and no other witness could have said that. He said they were both cumulative. Yes. Wasn't he really sort of wrong as to Sammy? No and not in my opinion because if you notice in the state's brief we point out how the state witnesses were talking about a big gun and a little gun and some thought well maybe Petty had a 22 or a 25. They thought maybe Branch had a nine millimeter and the reason for that is you can't tell the caliber of a weapon very easily. The caliber our expert testified refers to the to say the caliber of a gun from the distance. Unlike the nature of the gun where you can actually tell it's a revolver or not a revolver. So in that sense could he have added something by insisting that it was a nine millimeter and insisting that he got it from an apartment upstairs? Perhaps, but it also creates an additional inconsistency that we didn't talk about in the brief because Mr. Barnhill who was the other witness for Mr. Branch testified that Petty lived with his sister and he lived in the same apartment building with his sister on a different block. She didn't have an apartment in the building where this drug dealing was going on. Yet Mr. Sammy was saying that she got a gun from the apartment she quote be in. Well I don't know what apartment that would have been. She was in the foyer selling drugs having come from a different block in a different apartment. So it just created an additional inconsistency. Counselor can I ask you this question? Judge Fuentes asked Ms. Lyons if she knew what the whereabouts now of these two witnesses and she indicated she didn't. Do you know their whereabouts? No I don't know the whereabouts of these witnesses nor do I know the whereabouts of any of the state witnesses who testified. I want to tell you what he asked a very interesting that was a very interesting question because it threw in my mind something I hadn't really thought of. The habeas corpus case does not result in an acquittal for a defendant unless the basis for habeas corpus is that the evidence was insufficient under Jackson v. Virginia I think it is. But in this particular case the only remedy that the client can get is a relief the court would enter an order you must release him unless you retry him you know in a certain time it's usually 180 days something like that. However the court does not acquit him he's only released. That's correct. And therefore that's why you have to be in custody now that's broadly put to get the habeas. So the question is this what would the point be of granting a habeas for a new trial because two witnesses were not called and the attorney was ineffective and that met the AEDPA standard if the witnesses were not available because all you could do is go back through the same I don't know if this point has ever been raised but all you can do is go through the same thing in other words if you don't have the witnesses then what you know you would just rerun the course. That's correct. Well the course has been run so if you're not going to rerun a different course why do it I intend to raise that question to your adversary but I don't know you know any cases on that point? No but no actually I don't. Judge Fuentes tickled my foot on that I hadn't really thought of it. Well this is one of the problems in dealing with reviewing a case 20 years or more old particularly with people like this. But there's another there's another option that I think Miss Lyons is alluded to how the district court really didn't address this issue didn't didn't address the issue of counsel's ineffectiveness maybe counsel was affected well maybe there was a very good reason why the lawyer did what he did but but we really don't know because all of the state courts were saying is that it would be cumulative it would be cumulative it would be cumulative it would just be piling on but Miss Lyons is making a very good point it wouldn't be cumulative this is this is evidence that well concerning exactly what happened but the district court did not address the issue. The court addressed the issue in this particular fashion when somebody says something is cumulative it's almost like a value judgment being placed on that evidence right there as to whether it would have made a difference in the case. It's a way to look at the case and say you know this would not have reasonably altered the outcome of this case and I believe that's what was being said by the state judge and what was being said by the district judge and the reason they say that is because you do have to look at the totality of the case. One of the things they say in their brief on page 33 I believe is that this trial judge never looked at the totality of the case but now that we are looking at the totality and actually examining the certifications you can see for yourself why a seasoned trial attorney would not have called these witnesses to the stand and I want to make another point. I recently attended a lecture continuing legal education lecture by a former colleague a very well respected trial attorney and what he was pointing out is the more witnesses you put on the better it is for cross-examination because the more inconsistencies you're going to have and the better it'll be to open those inconsistencies up and I think John Mask knew this. In their brief they indicate that the Mr. Gramsci. We really have no way of knowing that do we? No but we are supposed to scour the record this is what Cullen tells us. You look at the record and see if there's any reason why or any theory that could have supported the judge's ruling below and when you look at the entire record by analyzing those certifications you can see there is a reason why a seasoned attorney would not have called those witnesses and that's exactly what's supposed to be done with a deferential review. Are you familiar with Grant versus Lockett? Are you familiar with Grant versus Lockett? He seems to cut against your view in that case did Grant petition where eyewitnesses were not called by trial counsel. That's true but if you look at the facts of Grant you can see how strikingly different they are from this case. There was one identification witness. That was all they had. They had no forensics. They had nothing else. They had one ID witness and as you know identification witnesses are problematic when there's nothing to support the identification and not only was there nothing to support the identification in Grant there was actual forensic evidence going the other way that the shooter couldn't possibly have been where the ID witness placed him. So you had a real problem but Grant they never did have an evidentiary hearing. They looked at the existing state record and they found that there was a problem with it and that's why Grant came down the way it did. The writ was based on other grounds in Grant. Yes there were other issues there and there was a mention of the superior eyewitness who wasn't called but you don't have that in this case. You don't have a superior witness here. You have the best witnesses who were called by John Mask and my adversary says that Mr. Grant practically begged John Mask to call these additional witnesses. Well if that's true and I have to I'm just going to assume it is for the moment then you know it was a strategic decision not to call them. Judge Van Interpret has another question. I just we've been talking about being deferential but hasn't the Supreme Court said that when it comes to counsel's choices and aren't we supposed to be highly deferential? Yes doubly so. Absolutely. I have a red light. Is there anything else you'd like to ask? No thank you. Thank you Ms. Friedman. Thank you very much. Thank you. Ms. Lyons. Ms. Lyons I'm sure you heard my question to your adversary. Why should we order the defendant released and in this case is what about 20 years old? Yes your honor. Why should we order the defendant released unless he gets a new trial at which these witnesses could be called if we have no reason at all to know whether or not they're available or whether or not they would say the same thing or even remember the case? At this case at this point your honor Mr. Branch has established that the state court unreasonably applied Strickland and there was a constitutional violation here. There's been no finding as to whether or not these witnesses are available and that's not the proper question at this junction. Instead the question is whether or not the state court was unreasonable and if there's a violation then this court should order a retrial. Has any decision said that? No your honor I'm not sure. Suppose it turns out that the judge says I want to know if these two witnesses are available and it turns out they're not. Should there be a new trial anyhow? Well to answer Judge Van Antorp's question and your question Judge Greenberg it just came to me. This court found in Roland v. Vaughn in that case the petitioner had alleged ineffective assistance of counsel and the attorney had actually already passed away and one of the witnesses was unavailable. Nevertheless this court found that was still ineffective assistance of counsel and that it didn't preclude a judgment on that point there. Facts were very different in that case though. Yes your honor true however there was still an unavailability point and a failure to call eyewitnesses to a shooting so there are certainly significant similarities. As far as the deference goes EDPA does provide deference except for where the state court has unreasonably applied Strickland as we are contending here. Their determination that these witnesses were merely cumulative was unreasonable because of the power of eyewitness testimony and the power of these witnesses to reinforce the witnesses that the defendant had called. For this reason we ask the court to reverse the district court. Thank you. Thank you Ms. Lyons. Thank you very much. Thanks to both counsel and particularly Ms. Lyons a third year law student at Duke University done just as good as a veteran of the bar. Thank you very much. Thank you. Thank you Ms. Friedman. We'll take the case under advisement.